ALEXANDER, Plaintiff in error, who was Defendant below, *v.* The WESTMORELAND BANK, Defendant in error and Plaintiff below.

1. The liability of an endorser is not altered by receiving the note as attorney for the purpose of suit; hence the statute of limitations runs in his favour during such time.
2. Award is final, if within the reference, and the subject matter is brought before the arbitrators; or if so decided by consent, though not included in the rule; *aliter* if there be no consent.

ERROR to the Court of Common Pleas of Westmoreland county.

This action was against Alexander as endorser of certain notes drawn by his brother, and the facts, to avoid the statute of limitations, were, that defendant was the president, and also attorney, of the bank, and as such, received them for collection, in 1822, but failed to recover the money; also, his statement, in the same year, of his indebtedness thereon. There was another point taken as to a reference, but the facts sufficiently appear in the judge's opinion here.

The court charged, in answer to the fourth point, that though there was no fraudulent concealment, but full disclosure by defendant to the bank within a reasonable time of the maturity of the notes, and the bank neglected suing within six years, they were not barred; and that the fact of defendant being president and counsel, until within a short time of the commencement of this suit, was a sufficient answer, under the decision of the Supreme Court, though they were of a different opinion previously thereto. To the fifth, that for the same reason, a neglect to sue himself as endorser was a bar to the statute. To the sixth, that being president and counsel turned him into a trustee, and avoided the statute.

*Brower*, for plaintiff in error, cited 13 Wend. 302; 8 Watts, 12; 1 Watts, 275; 1 Watts & Serg. 112; 4 Watts, 420; 9 Serg. & Rawle, 11; 1 Rand, 284; 16 Serg. & Rawle, 245.

*D. Foster*, contrà, cited 10 Wend. 80; 8 Wend. 1.

The opinion of the court was delivered by KENNEDY, J.

The error assigned is, that the court erred in their answers to the fourth, fifth, sixth, and seventh points submitted by the counsel of the defendants, the plaintiffs in error here. These answers present but two questions: 1. The answers to the fourth, fifth, and sixth points, raise the question whether, under the facts and circumstances admitted and given in

evidence, the statute of limitations was not a bar to the action of the plaintiffs below; and, 2d, whether, under the seventh point, if the claims for which this action is brought were offered in evidence, received, and passed upon by the referees in the action of account render between the same parties, it was a good bar, so that the same matter could not be overhauled in this action? As to the first question, the court below was of the opinion, that the facts and circumstances admitted and given in evidence, formed no bar to the recovery of the plaintiffs below, and, accordingly, in their answers given to the fourth, fifth, and sixth points of the defendants below, instructed the jury to that effect. We think that the court were mistaken in this construction; and, as it appeared most clearly and distinctly that six years, and indeed much more, had run from the time at which the testator of the defendants below became liable to pay to the bank the amount of the notes in question, either by virtue of his original endorsement thereof, or a subsequent promise and undertaking to pay the same in any way, the court ought, on the contrary, to have instructed the jury that the claim of the bank was barred by the statute of limitations. The court below seemed to have fallen into this error from a misapprehension of the ground upon which this court, upon a former writ of error in this case, decided that the court below erred in rejecting evidence offered by the bank, for the purpose of proving that the notes were placed in the hands of the testator of the defendant below on the 11th December, 1822, for collection, and that he proceeded, as the attorney of the bank, and recovered judgments in the Court of Common Pleas of Westmoreland, Armstrong, and Indiana counties, respectively, against George Armstrong, the drawer of the notes, and that the notes remained in the hands of the said testator until his death, and from that time in the hands of his personal representatives, until about the 18th of August, 1841, when they were delivered to the attorney of the bank. The court below seem to have taken up the notion that this court considered the evidence so rejected relative and material, because it tended to repel the plea of the statute of limitations, which, otherwise, would seem to have been in the way of a recovery by the bank. This, however, was not the ground upon which this court decided that the court below were wrong in rejecting the evidence. This court consider the evidence rejected material, because it tended to show that the testator had not come to the possession of the notes by paying or satisfying the bank the amount of them in any way; and that the court below ought, therefore, to have received the evidence, or, otherwise, it might have been contended, or perhaps inferred too, by the jury that the notes had been paid and taken up by the testator

in his lifetime, as the endorser thereof. But it is contended by the counsel for the bank, that, as the notes were placed in the hands of the testator of the plaintiffs in error as the attorney of the bank for collecting, he thereby became a trustee for the bank to the amount of his liability to it, by virtue of his endorsement of the notes, and that, having become thus a trustee, the statute of limitations could not shield or protect him from payment after any lapse of time, as long as the notes remained unpaid. It is difficult, if not impossible, to conceive how his having undertaken to collect the amount of the notes from the drawer for the use of the bank could possibly change the nature of his own liability, by virtue of his endorsement, to the bank for the amount of the notes. He continued liable for the payment of them on his endorsement as before, and certainly not otherwise. He, to be sure, by his undertaking with the bank to collect the amount of the notes from the drawer, clearly.not from himself, thereby created a new liability, not, however, to pay the money to the bank until collected and received by him of the drawer, or until he failed to collect and receive it through want of proper skill and diligence on his part. And even for a breach of this new liability the statute of limitations would have been a bar to a recovery, if six years had been suffered to elapse from the time the bank became entitled to sue at law for such breach. So, notwithstanding a trust may have been created by his undertaking to collect the amount of the notes from the maker, yet it is perfectly clear that it is such a trust as an action at common law would lie for a breach thereof, and, consequently, liable to be affected by the statute of limitations. To suppose the bank could have understood that he was to sue himself, as well as the maker of the notes, and collect the account from either, as should be found most practicable, is perfectly ridiculous, for no creditor would do such a thing, unless he intended to release the party whom he trusted from all his liability to pay. Besides, the creditor, by such a course, could never bring the matter to a close; for if the party so employed failed to sue himself, the creditor must employ him again to sue himself for a breach of his undertaking to collect the money of himself, and thus go on, ad infinitum, unless the party liable to pay, and so employed to collect, chose voluntarily to pay the money. But even if the bank had made a contract with *the testator* of the plaintiffs in error, that he should sue himself, and also the maker of the notes, and collect the amounts thereof as speedily as practicable, from the one of whom it could be most readily and speedily obtained or made, yet, taking such a contract to be valid and binding, it would have created no trust, for a breach whereof he would not have been liable to be sued at law, and which the statute of limita-

2 L

tions would not have barred, if six years had been barred, if six years had been suffered to run after the time at which suit might have been first brought. For the doctrine, as established by authorities on this point, I refer to Finney *v.* Cochran, 1 Watts & Serg. 118, and the cases there cited. The notes in question became payable on the 16th October, 1822, and on the 29th of that month it may be said that the testator of the plaintiffs acknowledged his liability to pay them, as endorser thereof, by drawing a report made by himself, in conjunction with other members of a committee appointed for that purpose, stating to the bank his indebtedness as endorser on the notes. But after that, no subsequent acknowledgment of this sort, or new promise, that we hear of, was ever made by him to pay the same, or any part thereof, to the bank. Nor does any suit appear to have been instituted afterwards for the recovery thereof, against him, or his representatives, until May term, 1831, when a suit was brought in the Court of Common Pleas of Westmoreland county, after a lapse of eight years and a half. But the statute of limitations had more than run in the interim, and become a bar to the recovery of the bank thereon. Whether this suit be a continuation of the suit brought in 1831, does not appear from the paper-book, nor is it at all material whether it be or not, for the statute forms a like bar to the recovery of the bank in either case.

In regard to the second question, I would observe, that the paper-book is deficient, in not giving a copy of the rule of reference under which the referees acted and decided the matters submitted to them. If the rule expressly referred *all matters in variance between the parties* to the action, and not merely such matters as were in variance and embraced in that *particular action*, then the instruction of the court below to the jury on the second question was erroneous; for the jurisdiction of the referees was co-extensive with the terms of the rule, and if all matters then in variance between the parties were referred to them to be decided, which would have included the claims now made in this action, and they were brought to the consideration of the referees and decided by them either for or against the bank, the bank could not afterwards maintain the action for recovery thereof, whether the decision of the referees was correct or not. If, however, no other matters were referred by the terms of the rule, than those properly capable of being included in the action, which was account render, then the instruction of the court to the jury would seem to be right; for I take it that the claims of the bank in this action could not, without consent, have been made in account render, on a trial before a court and jury. Consequently, they were not such as the referees ought or could properly have taken cognisance of and passed on; if they had, without the consent of

both parties, their decision could scarcely be recognised as binding, and certainly if they decided against the party making the inadmissible claim, it would and ought not to preclude him from making it thereafter in a proper form of action. It may be likened to an action of trespass, brought by a plaintiff when he ought to have brought case, and he fails to recover, because he has brought a wrong action; it will not preclude him from a recovery in action on the case, brought afterwards with a view to obtain redress for the same injury. The judgment of the court below is reversed, because they erred in their instruction to the jury on the first question. And in respect to their instruction on the second question, we are bound to consider it was right so long as it does not appear to have been erroneous.

Judgment reversed, and venire de novo awarded.